# CASES

IN THE

# APPELLATE COURTS OF ILLINOIS.

## FIRST DISTRICT—MARCH TERM, 1901.

### DETERMINED DURING THE YEAR 1901.

## Marshall Field et al. v. Mary E. Kane.

1. PRINCIPAL AND AGENT—*Liability of the Principal for Wrongful Arrest by the Agent.*—In determining the liability of the principal for a wrongful arrest by his agent, the criterion is, was the act within the general scope of the implied authority conferred upon the agent. If so, the wrongful exercise of it, though not expressly directed by or contemplated by the principal, will render him liable.

2. FALSE IMPRISONMENT—*Arrest by Employes in Mercantile Establishments.*—An usher on the floor of a large dry goods emporium followed to the street a customer whom he suspected of theft and there placed his hand upon her arm, and compelled her to return to the store with him, where she was taken into a room and interviewed by other employes of the proprietor. In an action for false imprisonment, the proprietor of the establishment was held liable for the act and mulcted in the sum of $475 as damages.

Trespass, for false imprisonment. Appeal from the Superior Court of Cook County; the Hon. THEODORE BRENTANO, Judge, presiding. Heard in this court at the March term, 1901. Affirmed. Opinion filed December 12, 1901.

Statement.—This suit was brought in trespass by appellee to recover damages for a false arrest of the appellee by appellants. The evidence discloses that appellee had been for a long time a customer of the appellants, and that she had a credit or " charge " account with appellants;

that at the time in question she visited the store of appellants and after examining certain wares upon the third floor, started away from the store, having made no purchase. She took the elevator, and upon reaching the main floor left the building. After she was upon the street Mr. Claribut, an employe of appellants, whose duties were those of usher on the third floor of the store, followed her, placed his hand upon her arm, and caused her to return to the store with him, where she was taken into a room and interviewed by others of appellants' employes. Appellee testified that Claribut opened her cloak and put his hand into her pocket, and that he stated to Mr. Weber, another of appellants' employes, "This lady has stolen a candlestick." Claribut testified to actions of appellee while in the store, which evidently aroused his suspicion, and that he followed her out of the building and asked her " if she hadn't got something there that didn't belong to her," to which appellee replied that he had made a mistake, and that he thereupon requested her to step into the store with him. He testified that in conducting appellee back into the store he had put his hand under her arm, "just as I would escort any lady." He denied that he or any other person had searched appellee. Appellee testified that Claribut "grabbed her by the shoulder" when taking her back to the store.

No article belonging to appellants was discovered in the possession of appellee, and it was not contended upon the trial that she had in fact taken anything. The appellants pleaded the general issue. The issues were submitted to a jury, and they found appellants guilty and assessed appellee's damages at $475. From judgment upon that verdict this appeal is prosecuted.

FRANK P. LEFFINGWELL, attorney for appellants.

DANIEL M. ROTHSCHILD and BLUM & BLUM, attorneys for appellee.

MR. JUSTICE SEARS delivered the opinion of the court.
Counsel for appellants states in his brief that he urges

two grounds only for a reversal of the judgment, viz., first, that there was no false imprisonment of the appellee, and secondly, that the act of Claribut in his conduct toward appellee was not within the scope of his employment by appellants, and hence did not render appellants liable.  We are of opinion that upon the evidence presented each of the questions raised upon these contentions was a question of fact properly submitted for determination by the jury. There is no serious conflict between the testimony of appellee and that of Mr. Claribut as to the manner in which appellee was stopped while upon the public street and taken back to the store.  The variance between their narratives as to the degree of rudeness displayed by Claribut might be of consequence as related to the measure of damages, but not so far as the fact of a wrongful detention of the appellee is concerned.  Upon Claribut's own statement, appellee was charged with having " something which did not belong to her," and was conducted back to the store by him, he having hold of her arm, in spite of her protest that he was making a mistake.  The jury were warranted in finding from this evidence that the appellee was charged with a theft, coerced into returning to the store, and detained against her will.  The elements essential to a wrongful arrest and detention were practically admitted. 2 Addison on Torts (Wood's Ed.), 798–9; Cooley on Torts, (2d Ed.), pg. 195–6; Bigelow on Torts (3d Ed.), pages 113–114; Moore v. Thompson, 92 Mich. 498.

Greater difficulty is to be found in the second question presented, viz., as to whether appellants are liable for this conduct of their employe.  The learned counsel for the appellants cites and relies upon the decision of the New York court in Mali v. Lord, 39 N. Y. 381.  The opinion in that case proceeds upon the theory that a principal can not impliedly and without express direction authorize another to do that as agent which the principal could not himself lawfully do.  The decision supports the contention of counsel. For here the appellants did not, in express terms, authorize Claribut to detain appellee nor could it be said that appel-

lants themselves might, under the facts of this case, lawfully detain her. The same reasoning would exonerate the principal from liability in every case where an agent made a wrongful arrest without express direction from the principal. We are of opinion that the basis of the decision is not sound, and that it lacks the support of the weight of authority in this country. In the Mali case, as here, a customer was wrongfully detained and searched upon suspicion of having committed a theft in a store by an agent of the proprietor of the store. The court, in holding that the proprietor was not liable to respond for this wrongful detention, said:

" In examining this question it must be assumed that by the employment the master confers upon the servant the right to do all necessary and proper acts for the protection and preservation of his property, to protect it against thieves and marauders; and that the servant owes the duty so to protect it to his employer. But this does not include the power in question. It can not be presumed that a master, by intrusting his servant with his property, and conferring power upon him to transact his business, thereby authorizes him to do any act for its protection that he could not lawfully do himself if present. The master would not, if present, be justified in arresting, detaining and searching a person upon suspicion, however strong, of having stolen his goods and secreted them upon his person. The authority of the defendants to the superintendent could not, therefore, be implied from his employment. The act was not done in the business of the defendants, and they were not, as masters, responsible therefor."

To that part of the reasoning of the court which concluded that it is one of the implied duties of the employe to protect his employer's property from theft, we assent, but not to the further conclusion of the court. In the case under consideration Claribut was, like the superintendent in the Mali case, employed in a manner which made it his duty to protect his employer's wares against thieves. That he might lawfully stop a thief who was carrying off any of those wares, can scarcely be questioned. This authority is to be implied from the nature of his employment. If the authority to detain one who actually was carrying away the goods

Field v. Kane.

of the master is implied, and the act of the agent is in that respect the act of the master, then when the agent wrongfully exercises this implied authority by detaining one under suspicion of guilt who is in fact innocent, it would seem as clearly to be the act of the master done by the servant, wrongfully, to be sure, yet in the exercise of the implied authority.

The fact that the exercise of the implied authority was wrongful, does not of itself exclude a liability of the master. The criterion is, was the act within the general scope of the implied authority conferred on the agent. If so, the wrongful exercise of it, although not expressly directed by or contemplated by the master, will yet render the master liable. Arasmith v. Temple, 11 Ill. App. 39; W. C. St. Ry. Co. v. Luleich, 85 Ill. App. 643.

In the Arasmith case this court said:

" That a master is liable for a trespass committed by his servant *bona fide* as such and in the line of his employment, although willful on the part of the servant, has been often declared by the Supreme Court of this State. * * * The act of the servant within the scope of his authority, with all its characteristics, whether of willfulness, negligence or unskillfulness, is deemed to be the act of the master. And everything done by the servant *bona fide* as such and in the line of his employment, is within the scope of his authority. The master's direction to do it is impliedly or conclusively presumed from the relation existing between them. * * * Having set the servant to work about his own business with the right to direct and control him as to the manner of doing it, he ought to answer to others for whatever injury they suffer by reason of what he so does or of the manner in which he does it; and equally so whether it be willful or only careless or unskillful."

In the Luleich case, *supra*, the facts differed from the case under consideration, in that there the principal, held liable for the wrongful act of the agent in causing an arrest, was a corporation and a common carrier, and the person wrongfully arrested was its passenger. This court, in deciding the case, said:

" The chief contention of appellant's counsel is, that the

causing the arrest was outside the scope of the conductor's duty, and he argues that authority to cause the arrest can not be implied. We think appellant's counsel misconceives the sense in which the words ' within the scope of his authority' are used in the text books and judicial opinions. It is not essential to the liability of the master, as counsel assumes, that the servant should be authorized, either expressly or by implication, to do the very act for which the master is sought to be made liable. Take a familiar instance : A, the owner of a wagon, employs B to drive the wagon in A's business. B, while so driving, drives recklessly or carelessly, by reason whereof the wagon collides with another vehicle, injuring it and some of its occupants. A is liable, not because he authorized B to drive recklessly or carelessly, which he did not, but because B was acting within the general scope of his authority, which was to drive the wagon in his employer's business. Having authorized B to drive the wagon, he is as responsible for his negligent driving as if he himself had been driving and guilty of the negligence which caused the accident. In legal contemplation, he acted by B."

Authorities which do not follow the reasoning of the Mali case, but proceed upon a different and opposite interpretation of the law, are found in Staples v. Schmid, 18 R. I. 224; Mallach v. Ridley, 9 N. Y. Supp. 922; Rounds v. D. & L. W. R. Co., 64 N. Y. 129.

In Staples v. Schmid, *supra,* the Rhode Island court held a shopkeeper liable for a wrongful arrest of a customer by an employe of the shopkeeper, although there was no express direction by the principal, and the only authority of the agent to act in the matter for the principal was the implied authority arising from his duty to protect his employer's property. The court said :

" It is quite true that the master would have no right to arrest and search an innocent person; but it is equally true that he would have the right to detain a thief and to recapture his property from him. The case therefore was one where the act, aside from any excessive force, might be lawful or unlawful, according to whether the supposed circumstances were real or unreal. The servant was left in a situation where he was obliged to determine the fact and where his duty to his master depended upon his decision.

Field v. Kane.

The decision was his, as the substitute of the master, and the act was one intended by him to be for his master's benefit and which his duty required if the facts were as supposed. Hence, as to third persons, it was the master's act. The criterion of the master's liability can never be whether the act would have been lawful for the master to have done in the circumstances as they actually existed. It remains to apply these principles to the case at bar. The servant in this case was left with an assistant in charge of his master's store. His ordinary duties undoubtedly were to show goods and to sell them to customers. It was, however, equally his duty to protect his master's property from pilfering. The acts complained of were evidently done with that intention. The arrest was for the purpose of searching for and recovering the master's property, not with the object of punishing crime against the public. The establishment was not a railroad station where the multiplicity of employes confines each one to a narrow round of duties, where special officers are stationed to preserve order and detain criminals, nor a large dry goods emporium where detectives and watchmen are employed to guard against thieves. The servant here was salesman and custodian in one. Whatever the master might do in the protection of his property, he expected his servant to do in his absence. If the servant had seen the plaintiff take up and secrete the package of spoons in question and had allowed her to walk away with them unmolested, could any one say that he had not been derelict in his duty to his master? If in the performance of this duty he mistook the occasion for it, or exceeded his powers or employed an improper degree of compulsion, the mistake and the excess must be answered for by the master."

We are of opinion that if it was properly determined that the implied authority of Claribut included the protecting of the wares of appellants against theives, then the wrongful act of Claribut in detaining appellee upon an unfounded suspicion that she had committed a theft, was the act of appellants.

Whether the implied authority of the usher included such protection of the appellants' property, was, upon the facts here, a question for the jury, and we are not prepared to hold that the conclusion expressed in the general verdict is against the weight of the evidence.

8    APPELLATE COURTS OF ILLINOIS.

In Wood on Master and Servant, Sec. 285, the author says:

"There is an implied authority to do all those things that are necessary for the protection of the property intrusted to the person."

The appellants here were conducting what the court in the case cited terms "a large dry goods emporium," and there were detectives employed in the store to prevent thieving. But the question as to the scope of the employment of Claribut was a question of fact for determination by the jury, and we can not say that the conclusion reached is unwarranted. Claribut was usher upon the floor where the appellee was suspected of having committed a theft. As such, his plain duty was to protect his employer's wares there. It does not appear that there was any other employe of appellants upon that floor whose specific duty it was to act in the matter, and to whom Claribut should have reported the circumstances before acting. If the suspicions of Claribut had been well founded, it would have been a useless thing to have gone in search of a detective while a theft was being committed in his presence, and if the culprit in such case had escaped through his inattention he would have been derelict in his duty. In the Rhode Island case the court held the shopkeeper to respond for actual damages only. No question arises in the case under consideration as to any such limitation of the recovery, as no complaint is made that the damages awarded are excessive.

No other question is presented upon the record, except as above considered. The judgment is affirmed.