## EFROYMSON ET AL. *v.* SMITH.

[No. 3, 446. Filed March 18, 1902. Rehearing denied June 20, 1902. Transfer denied June 25, 1902.]

PLEADING.—*Amendment.*—No error was committed in permitting plaintiff in an action for damages for false imprisonment to amend her complaint, after the close of the evidence, to conform to the proof by inserting the words "without her consent." *p. 453.*

Efroymson *v.* Smith.

PLEADING.—*Amendment.*—Where at the close of the evidence the complaint was amended to conform to the proof, the demurrer to the original complaint does not apply to the amended complaint. *pp. 453, 454.*

APPEAL AND ERROR.—*Complaint Questioned for First Time.*—A complaint questioned for the first time on appeal is good if it states facts sufficient to bar a second action. *p. 454.*

FALSE IMPRISONMENT.—*Principal and Agent.*—Where a foreman and watchman of a department store wrongfully accused a customer of stealing, placed her under restraint and searched her, the proprietors of the store are liable in an action for damages, although the particular act of the employes was wilful and unauthorized. *p. 454.*

SAME.—*Definition.*—False imprisonment consists in imposing an unlawful restraint upon one's freedom of locomotion or action. *p. 455.*

IMPRISONMENT.—*Definition.*—Imprisonment is the deprivation of the liberty of another without his consent. *p. 455.*

DAMAGES.—*Personal Injuries.—Action by.*—An instruction, in an action by a married woman for personal injuries, authorizing as an element of damages expense incurred in procuring medicines and medical treatment is erroneous. *p. 455.*

TRIAL.—*Verdict.—Remittitur.*—Where the court erroneously instructed the jury that medicines and medical treatment constituted an element of damages in an action by a married woman for personal injuries, the filing of a remittitur expressly including therein that portion of the damages assessed on account of medicines and medical treatment rendered the error in the instruction harmless. *p. 455.*

FALSE IMPRISONMENT.—*Excessive Damages.*—Plaintiff was purchasing a pair of shoes in a department store for her daughter who was employed in the store, and, with the consent of the shoe clerk started across the store to show the shoes to her daughter, when she was accosted by the watchman and floor-walker and accused of stealing the shoes, and taken to an alcove and searched; the clerk interposed in her behalf and she was released without apology, the floor walker saying to her: " This will teach you a lesson." *Held,* that a verdict against the proprietors of the store for $1,200 for false imprisonment was not so excessive as to induce the belief that the jury acted from prejudice, partiality, or corruption. *pp. 455, 456.*

From Marion Superior Court; *J. M. Leathers,* Judge.

Action by May E. Smith against Gustave A. Efroymson and others for damages for false imprisonment. From a judgment for plaintiff, defendants appeal. *Affirmed.*

*C. L. Holstein, J. S. Berryhill* and *W. B. Hubbard,* for appellants.

*G. W. Woods* and *F. McCray,* for appellee.

Roby, J.—Appellee alleged in her complaint that she entered the store of the appellants to purchase shoes for her daughter; that after obtaining permission of the clerk to take the shoes to the opposite side of the room to show them to her daughter, who was in defendants' employ, at the jewelry counter, she started across the room with the shoes for that purpose, but, before reaching her daughter, one West, a watchman, and Smith, foreman, while acting in the line of their employment for defendants, without right, without her consent, and violently, took hold of her, accused her of stealing shoes, and, without her consent, took her into a small alcove or small apartment connected with said store, and demanded that she give up and restore to them the articles they alleged she had stolen, and wrongfully and unlawfully restrained her of her liberty without her consent, and so restrained her until the clerk who had given her permission to take the shoes across the room explained the matter, when she was released; that there were many people in the store who witnessed the occurrence, and that by reason of these acts she was shocked, humiliated, and insulted to such an extent that she was confined to her home with nervous prostration for many days; that her reputation was damaged, etc. The issue was formed by a general denial.

The sufficiency of the complaint was questioned by a demurrer, which was overruled. After the evidence was closed the appellee was permitted to amend by inserting the words "without her consent" where they now appear in the pleading. This action of the court is assigned for error. The sufficiency of the complaint as amended is presented here by an assignment of error. There was no error in allowing the amendment. §399 Burns 1901; *Raymond* v. *Wathen,* 142 Ind. 367, 372. The demurrer to the com-

plaint does not apply to the amended complaint. *Tague* v. *Owens,* 11 Ind. App. 200. The amended complaint being questioned for the first time in this court, is good if it states facts sufficient to bar a second action. *Xenia Real Estate Co.* v. *Macy,* 147 Ind. 568, 572. The pleading shows that appellee was unlawfully restrained from her liberty by force. It is therefore sufficient. *Boaz* v. *Tate,* 43 Ind. 60, 64; *Hildebrand* v. *McCrum,* 101 Ind. 61.

It is averred that the acts complained of were done by "certain agents, employes or clerks then in the service or employ of said defendants, to wit, one William West, a watchman, and one Smith, foreman in said store, while acting in the line of their employment for said defendant," etc. The appellants invited the public to become their patrons, and to visit their place of business. The appellee accepted their invitation, and had a right to personal protection while at the store, especially as against the agents and servants of the appellants themselves. *Dickson* v. *Waldron,* 135 Ind. 507, 520, 24 L. R. A. 483, 41 Am. St. 440. The appellants were responsible for the acts of the agents performed while engaged in the discharge of duties within the general scope of the agency, although the particular act was wilful, and not directly authorized. *Kingan & Co.* v. *Silvers,* 13 Ind. App. 81, 88; *Pennsylvania Co.* v. *Weddle,* 100 Ind. 138, 140; *Pittsburgh, etc., R. Co.* v. *Sullivan,* 141 Ind. 83, 88, 27 L. R. A. 840, 50 Am. St. 313.

The first instruction given by the court contained a statement of the material averments of the complaint, but did not give the jury any direction as to what their verdict should be. The sixth instruction was to the effect that if the jury should find from the evidence that the facts averred in the complaint (specifying them) were proved, the verdict should be for the plaintiff. It also stated the opposing hypothesis, with the direction that upon such facts the verdict should be for the defendant. These instructions, taken together, fully and fairly stated the issue.

*Craig* v. *Frazier*, 127 Ind. 286. The fourth instruction stated that "False imprisonment consists in imposing an unlawful restraint upon one's freedom of locomotion or action." The definition is conceded to have been correct. 12 Am. & Eng. Ency. of Law (2d ed.), 721, and notes. It further defined "imprisonment" as "the deprivation of the liberty of another without his consent." The definition was correct (2 Kent's Com., 26), and was applicable to the evidence. The tenth instruction authorized the assessment of damages on account of expense incurred in procuring medicines and medical treatment. Appellee was a married woman, and the instruction was therefore erroneous. *Ohio, etc., R. Co.* v. *Cosby,* 107 Ind. 32.

The evidence shows a total expenditure of $7 for such items. The verdict was for $2,000. The appellee filed a remittitur of $800, expressly including therein that portion of the damages assessed on account of medicines and medical treatment. The remittitur rendered the error in the instruction harmless. *Nickey* v. *Zonker,* 22 Ind. App. 211, 216; *Tucker* v. *Hyatt,* 151 Ind. 332, 44 L. R. A. 129.

The evidence tends to support the verdict. It shows that appellants conducted a department store in Indianapolis; that appellee desired to buy a pair of shoes for her daughter, who was in their employment at the jewelry counter; that she took two shoes, not mates, from the shoe clerk, and with his permission started across to show them to her daughter; that West, appellants' watchman, saw the shoe clerk hand her one shoe and saw her immediately start across the store with it in her hand. As shown by his own testimony, without any investigation, he "touched her on the shoulder." She says "He took hold of my arm." He says that he said, "Lady you have a pair of shoes under your cape." She says that he said, "You are stealing shoes." Smith, the floorwalker, then came up; both West and he took hold of her arms, took her into an alcove, and said, "What else have you got there?" "He took hold of my

cape and said, 'Have you got any pockets?' and I was all the time trying to explain that I had permission." She further testifies that she said "That if you will please send for the gray haired gentleman over there he will tell you he gave me permission to take the shoes," and that Smith answered, "I have heard people talk that way before."

West, the watchman, made no inquiry at the shoe counter at any time, and manifested an entire indifference as to whether appellee was rightfully or wrongfully accused. The clerk at the shoe counter seems to have interposed; upon his own motion, he said: "What are you doing, Smith? I gave the woman permission to take those shoes." Smith replied, "You have no right to do that without my permission." He then said to the appellee, "This will teach you a lesson. You should be more careful." No apology was made and no regret expressed to her by any person. There does not seem to have been anything in the appearance of the appellee to invite suspicion or discourtesy. The learned counsel for the appellant attribute to her opposite qualities.

The damages assessed are not, in view of the evidence, so great as to induce the belief that the jury acted from prejudice, partiality, or corruption, and do not, therefore, furnish ground for reversal. Judgment affirmed.